Good morning, ladies and gentlemen. Our first case of the morning is case 118278, People of the State of Illinois v. Anthony M. Stapinski. Are you ready to proceed? Ready? Good morning, Your Honors. May it please the Court, I'm Phyllis Perko and I appear before Your Honors this morning representing Anthony Stapinski. This case involves a question of whether or not Anthony is entitled to the benefit of his bargain from a cooperation agreement made by him and his counsel with the police. Pursuant to this cooperation agreement, Anthony fully performed, gave information, and he participated in a controlled delivery of drugs on behalf of the police. He kept his promise, but the police breached their promise not to charge him, and about a year after Anthony's performance, they did in fact initiate charges against him by filing a complaint and seeking a warrant application. The trial court granted Anthony's motion to dismiss the indictment, but the trial court reversed with one, excuse me, the appellate court reversed with one justice dissenting the appellate court ruling that suppression was an adequate remedy for the wrong that had occurred because Anthony is capable of receiving a fair trial. We have presented two arguments on appeal. The first of these addresses whether the appropriate standard of review is discretionary or plenary. Unless the court has some immediate questions, we would rest on our briefs regarding this argument, our position being that whichever standard the court deems is appropriate pursuant to precedence, it is appropriate. It would require dismissal of the charges under the facts of this case. So today we will concentrate on our primary argument that the breach of the cooperation agreement in this case caused a violation of substantive due process. The core basis on which we claim the violation exists is because of the deprivation to Anthony of the benefit of his bargain, as well as the nature of his performance pursuant to the bargain. It's of course clear that there is no precise definition regarding the protection of due process. Nevertheless, it is clear that the right protects the individual from arbitrary government action. It is our position that the government action in charging Anthony in this case clearly is one that is arbitrary and in breach of its promise. There are several important or controlling facts on which we rely. The first of these is that the promise between Anthony and the police was made at a time before formal charges had been filed by the prosecutor. This fact becomes important in light of the state's argument on appeal, or one of the state's primary arguments on appeal. Second of all, there is no question but that Anthony fully performed. This was the finding of the trial court at the motion to dismiss, and the finding has not been challenged by the state on review, either in the appellate court or in this court, so that there is not a factual question in this case. The defendant fully performed what was asked of him and what he promised to do. Furthermore, the nature of that performance is important because it involved the surrender of one clear constitutional right, and that would be the constitutional right against self-incrimination, but it also involved the surrender of other liberty interests, and that being primarily in the nature of the performance of the controlled by that Anthony participated in. At that time, he wore a wire and was completely under the control of the police as he performed the controlled delivery activity that otherwise would be criminal activity, so that there is a considerable infraction and surrender of his liberty interests in his performance with the police activity. Furthermore, the charge in this case clearly is one that is initiated by the police. The record on appeal reflects that a year after Anthony's performance, the very officer who formed the cooperation agreement with Anthony and his counsel, initiated the filing of a criminal complaint and a warrant application for Anthony's arrest, again, at a time before the record would reflect, for all we know, that the prosecutor was involved. Clearly, the initiation of the prosecution in this case was by police action. Now, the record does not provide any reason why the police took this action a year after Anthony's performance. At the hearing on the motion to dismiss, the officer testified that the charges were brought because Anthony was required not only to engage in the controlled delivery of the drug ketamine, which is the drug on which the charges in this case are based, and the transaction on which these charges are based, but also that he was required to engage in unrelated informant activity. Ms. Perko, can we go back to that this was sanctioned by the police and not the prosecutor? And I understand that's what the record reflects. Is your argument that there's a burden on the prosecutor to indicate that the action taken by the police, the agreement taken with the police, was sanctioned by the prosecutor? Do we have a different case if they had met that burden? Well, I think that we could have a different case if the record showed that, for instance, the police were engaging in investigation that the prosecutor likewise was involved in. It's our position, it's my understanding of the law, that any determination of a substantive due process violation would be highly unconstitutional. It would be highly fact-bound. And so we need to look at what the facts are in this case. So hypothetically, there could be some overarching reason why a prosecutor would be, or the system in general, that the state would be justified in ignoring an agreement that had been made between a defendant and police and charging the defendant. But not under the circumstances of this case, where there is absolutely no reason on the record as to why the police may have acted in this fashion. So that you have, on the one hand, an agreement, a cooperation agreement by the two parties. You have the defendant fully performing, and then you have the police breaching the agreement. And the record being absolutely silent as to any reason, legitimate reason, why that would have happened. I mean, in fairness, I wish to say that the state argued in the trial court at the motion to dismiss that Anthony was supposed to perform other informant activities. But that theory was, that actual view was rejected by the trial court and it has not been challenged by the state in review. So, we have a record that is silent as to any legitimate state reason for reneging on the cooperation agreement. But, more pointedly, perhaps in answer to Justice Thomas' question here, yes, I believe we have a record that is silent. We have a different case if the record provided a reason and potentially a justification. I mean, it would be difficult to hypothesize what that justification might be, but clearly it does not exist in this case. When you were outlining the facts, you said the bargain was initiated by the police officer and that same police officer a year later initiated the prosecution. Correct. Are you indicating, therefore, that had the prosecution been initiated by the state's attorney on its own, based upon reports that had been filed earlier, we would have a different case and you would not have an argument? Well, I'm not sure I wouldn't have an argument, but it would be a different case. I mean, because I think I've tried to establish in the reply brief that there should be nothing construed in my argument that seeks to detract from the legitimate charging authority of the prosecutor. I mean, patently the police do not have the same charging authority as the prosecutor under our system. But that does not mean that the police are deprived of the ability to initiate, to report, to arrest, to initiate prosecution by reporting criminal activity or by arresting criminal activity or, on the other hand, not reporting criminal activity. And that, of course, was made clear in this Court's decision in People v. Hammond and in the precedence on which it relies. So that would be a different case. I'm not prepared to say that there wouldn't be an argument for the defendant in such a case, but it's simply not the case before this Court. And to make the record clear, there is no evidence here or suggestion that the prosecutor was in any way involved with this agreement? No. But the fact of the matter is we don't know one way or another. There is simply no evidence on whether the prosecutor was involved or was not involved. At another point in my argument, particularly in the reply brief, I attempt to take the State to task for characterizing the police promise in this case as an unauthorized promise. It's my position that we simply don't know whether it was an unauthorized promise or an authorized promise as far as the prosecuting office goes. I mean, we simply don't know. There's no evidence of that whatsoever. If there are no facts, it was your motion before the trial court to dismiss that triggered this issue. You seem to be suggesting that in order to sort out exactly what was the relationship between the prosecution and the police, that there's a vacuum of evidence. If there's a vacuum of evidence, then how can the court have ruled on your motion to dismiss? I believe that we respond to this in the reply brief. But, for instance, pursuant to the precedents in Hammond, it would be a legitimate viewpoint of defense counsel going into a motion to dismiss that the police have the normal authority to make cooperation agreements. And certainly, Anthony was represented by counsel at the time this cooperation agreement was made. So, it would be unusual for the defense to think that the police did not have the normal authority that police have to enter into a cooperation agreement. I mean, it's our position that that hardly could have become an element of our burden of proof when there was no suggestion of unauthorized activity. And we point, for instance, because certainly we believe that at least to some extent the pleadings would frame the issues. And in the answer to the motion to dismiss, the state never argued that there was a lack of authority for the police to enter into this cooperation agreement. So, certainly in terms of the pleadings, those would not have framed an issue that would fall into the defense burden of proof when there never was a claim by the state that the promise was unauthorized. If the authorization of a promise is important to the court, is there any value in a remand for adhering on that? Well, I mean, I think we're looking at a situation where the state has had its bite at the apple. I mean, they have framed the issue. They filed a motion for reconsideration in this particular case after the dismissal order was entered. And even at that time, I mean, they weren't seeking to put on proof of an unauthorized promise by the prosecutor or that there was prosecutorial involvement. So, I mean, it would be our position that they've had their opportunity to litigate this. They filed pleadings. And they didn't seek to litigate it on this basis so that we are left with the situation that, I mean, the action is completed and there's nothing to be remanded. There's no pleading that indicates an issue that was unresolved by the trial court. Regarding the status of law... I just have to stop you there, Ms. Pearl. They do argue, though, right, that police lack the authority to bind the state to a non-prosecution agreement? They do on appeal. I mean, they do on appeal as a matter of the charging authority. I mean, without any factual underpinning, it is true that the state argues as a matter of law that a cooperation agreement is unauthorized. I understand their argument to be that a cooperation agreement that includes an aspect of agreeing not to bring charges is per se, as a matter of law, beyond the authority of the police. And that position, we submit, is untenable pursuant to the ideas and the rulings and the rationale and precedence in People v. Hammond, which indicates that police have a role in initiating a prosecution, not obviously in terms of bringing a formal charge, but of initiating a prosecution by choosing to arrest or choosing not to arrest, by choosing to report activity to the prosecutor or not report activity. And given that rationale in Hammond and related authority, we would submit that there would be no basis for this court to reverse those precedents or draw away from those precedents and hold that a cooperation agreement of the nature of the one in this case is per se outside the authority of the police. Ms. Perko, what is your best argument for the authority for enforcement of this agreement? Schmidt is distinguishable because it's the state police, not local police, that were involved in that case. Is there something else? Or is it just because it's the custom and practice of police departments to have informants? Well, I mean, Schmidt, I guess I would question whether or not the law enforcement personnel involved, meaning the department, I would respectfully disagree with the concept that that would render Schmidt distinguishable from the current case. I would point out to the court that cited in my reply brief is an additional case from the 1st District, People v. Marion, which has now held that a police cooperation agreement is enforceable as a matter of substantive due process. But even assuming then that Schmidt is distinguishable because of the law enforcement agency that is involved, I mean, certainly that could be a difference between the two cases. But when we are talking about substantive due process and fundamental fairness, we're talking about state action. And I believe there's a segment in my reply brief where I'm distinguishing some cases or quarreling with the way the state has characterized my citation to some cases. And I attempt there to stress that it is state action that the due process protection is looking at. It's not police action. It's not prosecutor's action. It's state action. So that when any agency or person is acting on behalf of the state and clothed with the authority of the state, that's state action. So for those reasons, I would submit that that, although a difference, wouldn't be a distinguishing factor. Thank you, Counselor. Your time is expired. Thank you, Your Honors. Good morning, and may it please the Court. Counsel, I'm Assistant Attorney General Matthew Becker on behalf of the people of the state of Illinois. And in asking you to let this case proceed to a trial on defendant's guilt or innocence, we're asking you to look not just at the substantive due process issue, but also at the other legal questions my opponent has raised that inform the substantive due process question here. Because she's asserting, in essence, a substantive due process right to have the benefit of a particular kind of bargain. So that has everything to do with authority. She's also attempting to get a prosecution dismissed to vindicate the defendant's interest in the defendant's labor during the cooperation process and the distress that the defendant might have felt in exposing himself to a certain amount of risk during cooperation. Ultimately, there are really three legal questions on the table here. One is that the police don't have freestanding authority under Illinois law to bind the prosecution to a non-prosecution. The other is that the kind of interests in labor and emotional distress protection that my opponent is raising don't really fall within the group of interests that a trial court can vindicate by dismissing a criminal charge. And finally, there is the substantive due process question, whether it's framed under a shocks to conscience test, principles of order, liberty, or fundamental fairness. That question whether substantive due process requires you to alter the rules on authority or the rules on when a trial judge can and can't dismiss charges. Mr. Becker, what is your argument here? Because you have changed your argument almost every step of the proceedings. First, before the circuit court, you argued the terms of the agreement, thus conceding there was an agreement. And then in your motion to reconsider, you argued there was no agreement because the police had no authority to bind you. Then on appeal to the appellate court, your argument changed again when you raised the propriety of the remedy and argued for the first time the suppression of defendant's statements that are not sufficient or is sufficient. So I'm just trying to determine which, at this point, which arguments you've abandoned and which ones you're going to continue with. At this point, Your Honor, we're arguing that insofar as we're talking about a self-incrimination interest, suppression is an adequate remedy. Insofar as we're talking about defendant's interest in his labor and guarding against the kind of risk and distress he might have experienced, that's not really something that can be vindicated in the forum of a criminal trial by dismissing a charge. And we are arguing the police authority question. Now I'd like to qualify slightly the characterization of the motion to reconsider. At the motion to reconsider stage, the prosecutors below did argue both that suppression would be an adequate remedy and that there was no authority on the part of police to bind the prosecutor. Now to be sure, this would be a cleaner case and this would be easier for me to argue today if the prosecution had said right at the front, by the way, this agreement was not authorized. On the other hand, the version of the agreement that the prosecution was arguing for was a version of the agreement that the prosecution might well have ratified, been willing to ratify post hoc. And ordinarily a principal can ratify a purported agent's agreement after the fact. Now we also did prevail on appeal and we are arguing legal bases for affirming the judgment of the appellate court which lets this case go forward. Now on the authority issue, I should turn here to the question of charging and what the agreement really was and different ways to construe this agreement. So as a technical matter, Sergeant Masterson could not have actually charged the defendant with this felony. She did get the machinery going by filing this complaint, but as a matter of law, under sections 111.3b and 111.2a of the code, felony charges are initiated either by indictment or by information. So that didn't happen solely at the behest of the police officer. Now there's another question here, well can a police officer promise not to alert the prosecution or not to alert prosecutors to crime pursuant to one of these agreements? And Hammond doesn't really neatly answer that question. Hammond says that as a practical matter, sometimes police officers exercise discretion and this is going to prevent prosecution from happening. But the fact that that is so doesn't necessarily mean that police can affirmatively promise not to tell prosecutors about a crime in such a way that a defendant can later come to court and have that promise enforced. Mr. Becker, was there any burden upon the prosecution to indicate that they were not going along with this agreement? We heard Ms. Perko say that the record is devoid of any facts regarding that. Is there a burden there? Would that change the analysis for the court? Certainly if the issue had been neatly teed up at the outset, then that would make this case look different. As far as the burden, ordinarily in agency law, the burden is on the party asserting agency to prove it. Now the extent of that burden will sort of depend on how natural it is to assume that the entity being sued or the entity being accused in the motion has agency. And defendant's theory appeared to be primarily that the people, by setting up police departments, have authorized police to make these kinds of agreements. Let me just stop you. What happens though when the prosecutor comes in and says this agreement was not sanctioned by the prosecutor? I mean that's your argument. It's not sanctioned by the prosecutor. At that point, does the trial court merely rely upon the representations of the prosecutor? Or say, do you have anything to prove that that's indeed the case? Well at that point, the defendant presumably would have an ability to put the police on the stand, as they were on the stand here, and ask them questions about their interaction with the prosecutors and try to establish the point. And in theory, maybe even some members of the state's attorney's office could be put on the stand, although that could cause some difficulties there. It seems to be the defense attorney's belief at the time of the evidentiary hearing that the prosecutor's office had not been involved. There's little talk in the record about defense counsel needing some additional time to negotiate with the prosecutor, in part to convince them that there was an agreement of some kind. At the very least, I think there's a little bit of culpability on both sides in not having this squarely presented at the evidentiary hearing. The defendant's primary theory was that police had their own agency and didn't need authorization from the prosecution. And again, we prevailed on that point on appeal, although not in motion to reconsider. So if the court thinks that that's essential to getting these issues right here, then what should happen at most is a remand of the trial court for a hearing on that issue, and not to simply award the defendant a dismissal of the charges. Could we possibly enforce the cooperation agreement on equitable grounds? If we allow such conduct like this, won't the floodgates open up and police will be inducing defendants to cooperate with promises of prosecution, and the police attorney will come back and say they won't abide by it? Is this fair dealing? Is this in good faith? What about equitable grounds? The equities on closer inspection cut both ways here, Justice Berg. As far as the floodgates opening, we haven't seen much evidence of floodgates opening in the 2nd District or the 4th District, where the rule seems to be that these kinds of agreements are not enforceable. As a practical matter, police officers won't necessarily want to do this all the time, because they do have to testify often in court if they're doing these kinds of investigations, and if all that happens is that there are suppression hearings, I gather that most police officers don't want to acquire a reputation in local courts for consistently lying to suspects or misrepresenting things to them. Or to that community of not being trustworthy. Indeed, Your Honor. And there's also a real threat that if police miscalculate here, even if suppression is the only remedy available, they may well lose the prosecution. So if there's not enough evidence predating the agreement and not enough evidence independently gathered, the granting of the suppression motion might well end the case. And also, defendants can get some benefit, although not one they would have initially chosen in these circumstances. They're still going to be able to argue their cooperation at sentencing. So that's not what they would want, but that is something to consider in the mix. And if you were to endorse my opponent's rule, there would be other fairness and public integrity concerns at issue. There would be a much larger universe of people who are authorized to define the prosecution. They wouldn't necessarily have formal legal training. Police officers may be somewhat less likely than prosecutors to write these agreements down. So that the litigation might affect public trust in a different way. And then in the background, there's also the consideration that in deciding what remedies equity requires, in deciding what substantive due process requires, suppression is the norm. Dismissal of charges is a rare kind of remedy. And there are forms of police misconduct that we would consider probably far more grave than what happened here. Like an overtly coercive interrogation, tactics bordering on torture, willful Fourth Amendment violations. And what you get in those circumstances is a suppression remedy. And even if there's a willful Brady violation, though that's extraordinarily culpable, what you'll ordinarily get is a remand for a new and fair trial. So although the kind of rules my opponent is arguing for might be rules that the same legal system would adopt, they're not clearly better and fairer than our rules in the mind of the police. But Mr. Becker, what about the idea that in this particular prosecution, the fundamentally fairness given the defendant's detrimental reliance and the prejudice he sustained? I'll take that in two parts. I gather the question is first about his benefit of the bargain, and second about the other kinds of harms he suffered in reliance. Or could. Or could. So if you're looking at this idea that his labor was taken from him inappropriately, or that he was subjected to emotional distress or undue risk, those actually look a lot like tort claims or other kinds of civil rights claims. But the defendant is not seeking to vindicate those in a civil action over which a trial court has been given the ordinary form of authority to adjudicate those claims. Instead, he's trying to use the prosecution itself and the ability to prosecute him as a kind of offset against those damages that he could in theory be seeking. And Navarroli gets at this a little bit. In Navarroli, there was a combined cooperation and plea agreement, and the prosecution withdrew the agreement before a plea could be entered on it. And the dissent was correctly at great pains to point out that the defendant there had cooperated. He weren't a liar and subjected himself and his family to great risk, and that this was very stressful and that he didn't work for the state. And yet, the majority did not think that those could be reached by dismissing or reducing charges. Those were just separate kinds of civil rights concerns. So we're not even necessarily saying that what happened to the defendant was fair in and of itself. What we're saying is that the charge and the ability to pursue the charge is not an asset of the state that can be reached in a criminal case. Now, as far as the benefit of the bargain, here our authority argument is critically important. The reason is that expectation interests or interests in the benefit of a bargain have everything to do with authority. Even if you're not greatly harmed in reliance on an agreement, ordinarily in a contract you can pursue expectation interests. The reason that our law allows people to do that is because the authorized promisor has made a promise. And the right kind of promise, made under the right circumstances with legal authority, is considered sacred. And that's really what Starks is about. To be sure, the Starks decision, as my opponent points out, talks at length about public trust, but it also talks about the need for the public to be able to trust legitimate agents of the state in charge bargaining and plea bargaining processes. And we know that prosecutors are elected in our state, or they're appointed by the people who are elected, to make these kinds of decisions, to weigh different possible charges against others. We know that they have a traditional role in charge bargaining and plea bargaining in most kinds of cooperation agreements in most jurisdictions. We know that, at least in the felony context, the prosecutor and the grand jury have exclusive power to initiate charges. And we know that in the charge dismissal context, a police officer can't come in and have a charge dismissed. So for all of these reasons, the Starks court thought that we need to be able to enforce the promises that prosecutors make when they're putting a charge on the table or promising to take a charge off the table. But that authority hasn't been given legally to police. And for that reason, this contract concept, the benefit of the bargain or of an expectation interest, isn't really available. How does a defendant, we all know that, but how does a defendant know that? In many cases, the defendant will not know that. Now, here it's a little unusual, because the defendant did have retained counsel at this time. His Sixth Amendment right to counsel hadn't attached, but he still had Miranda and McCauley right to counsel. Was he given his Miranda rights? Because there were no charges made in the beginning. So why would the Miranda rights be given then? Well, I believe that he was initially taken into custody and requested an opportunity to speak with his lawyer, who was released preliminarily. And then he came back to the police station. And at that time, he had family members. There was a federal postal inspector at the meeting. Sergeant Masterson was there, and a retained attorney. So no Miranda rights then? I believe not. But he nonetheless had counsel with him. So there's a bit of a question about whether counsel's actions could even be attributed to the state here. So I think our answer would probably be the same, even if he had no lawyer then, and the lawyer's advice played no role here. But to get to your point, Chief Justice Garmon, I think that defendants often will not know the ramifications of this. But the fairness to the defendant and the defendant's own perspective is not the only thing on the table here. There's also the fairness to the people as a whole. And that's why over many decades, this court and the Supreme Court of the United States have carefully calibrated when you get a new trial, when you get a suppression remedy, when you have to pursue your claim in some other forum. There's always this background interest of the people in pursuing these prosecutions, and you don't want to overdo the remedy. And this court hasn't. And again, that's not out of a general callousness towards defendants or an anti-defendant bias. It's just that in the balance of fairness here, we need to maintain clean lines of authority. And again, defendant's statements, if they truly were given involuntarily or unknowingly, aren't going to be used against him. And if a constitutional tort was committed against him in the process of all of this, perhaps that constitutional tort could be pursued elsewhere. But what is unfair to the people would be to bind them to a promise that another actor was not authorized to make. And I would note... Doesn't the state, I mean, wouldn't the prosecutor have a lot better opportunity to affect that kind of aberrant behavior than a member of the public? To be sure, prosecutors have more regular access to the police. And whatever rule you announce today, I imagine that prosecutors will be sending letters and doing what they can to alert local police to the ramifications. Nonetheless, that does not mean that prosecutors exercise direct supervisory authority over police, and it doesn't mean that police can assume the role of an agent for prosecutors, even if prosecutors haven't expressly authorized this. And again, the state is not always a model. Sometimes there's state action in some sense, or someone might be acting under the color of state law, and yet not all of the relevant units of government are really reachable in an action. You can think about the Immunity Act, and when it does, it doesn't apply. You can think about estoppel, the government tax advice context. There's the Austin Liquor Mart doctrine there. You can think about municipal liability under MNL. So our law is actually right with examples of instances where not everyone in the state can bind everyone else in the state. Would estoppel be available here? No, Your Honor. As a general rule, estoppel is not available against the government, and generally estoppel is going to depend on the relevant unit of government having held itself out as bound in some way, or having misled the public. And on this record, there's no reason to think that prosecutors in Will County or elsewhere have misled the public about the police role here. At best, some of these things are murky because of the district split. On the one hand, the first district in cases like Schmidt and Marion, and on the other hand, the second district in early Cambridge. So suffice to say, there's an opportunity for Your Honors to clarify the law here. In the absence of clarity, it would not be appropriate to constitutionalize the rule today that my opponent is asking for and hold the people accountable for the police's decision. Thank you, Mr. Baker. Mr. Perko? I want to get back to this sanction question by the prosecutor. If we agree with your position that the police can initiate this type of agreement, I mean, we don't need to address that issue. If we believe that the prosecutor had to be in agreement with the agreement, then we're left with the record that we're left with, and I believe Mr. Baker even indicated if there's not enough facts regarding that, I think he blamed both sides, remanded. And as I was sitting here thinking about a remand and thinking about Justice Tice's question about it was your motion, I'm just, I was thinking about what that hearing would look like. How would the prosecutor who indicated that, hey, we did not sanction this agreement, how would they go back and prove a negative? It seems, you have to help me with that because I can see where the defendant could put a police officer on the stand and say, hey, I called the state's attorney and he told me go forward with it. But outside of them saying that they didn't sanction it, how would they, how would we put a burden on them to prove the negative that they didn't? Well, the point is that they have never said that they didn't sanction this. I mean, so that in that regard, it's our position that the state's argument really is based on something that is entirely hypothetical. But at base, whether, I don't think that your honors can resolve this case at this point by ordering a remand without addressing the ultimate question that we have presented on appeal. And the ultimate question that we've presented on appeal is whether or not  by the prosecutor. The fact of the matter is that there was full performance of this agreement and the defendant did not receive the benefit of his bargain. And there, contrary to what the state is saying, there is no evidence of what may be the supposed fairness of the people of the state of Illinois in allowing the state to avoid this bargain and to avoid giving defendant the benefit of this bargain. Isn't the state's argument file a civil rights action against the police department? That seems to be their argument. If there's a remedy, if it's police misconduct, what is the remedy? File a 1983 suit and their argument is not dismiss the case. Well, that's a remedy in a situation where you don't have an agreement and you haven't bargained for a specific remedy. But, I mean, that is that type of a remedy. But why are we sending the defendant outside of the criminal justice system when we are faced with a question of unfairness? Now, whether it goes to the level of constitutional unfairness that demands this ultimate remedy of dismissal of the indictment is another question. But clearly, we have an unfairness to the defendant in this case. He was promised that he would not have to face charges and here he is facing charges. The state is suggesting that there is some unfairness to the people in this situation. I would have to ask what is that unfairness? The state got exactly what they wanted out of this bargain. They wanted the higher ups in the drug chain. They got the higher ups pursuant to the controlled delivery. They got what they were looking for in this bargain while the defendant got nothing. I mean, I would direct this court particularly to the language, for instance, in People v. McCauley regarding this court's jurisprudence under the state due process law where McCauley talks about fundamental unfairness. It talks about arbitrary police conduct and it talks about the fairness, the integrity and the honor of the criminal justice system. I understand your fairness argument but by your very statement the state got what it bargained for. Isn't that a determination made by you and not made by this court that the police can bind the state? Well, I... And as to what the state loses is that if rogue police officers make these kind of deals on their own that the state loses the ability to do what they may have wanted to do in the first instance. Well, I mean, we don't know what the state would have... Right. And if we're talking about the state, I mean, we're talking about the prosecutor here presumably, we don't really know what the prosecutor may or may not have wanted in the first instance without knowing that... And without setting up a mechanism that really is not a mechanism that we have in the law and procedure of the state of Illinois. I mean, the police are not at these early stages or in the circumstances presented in this case an agent of the prosecutor. This is not a question of the police having charged Anthony in a formal sense. This is a question of the police initiating prosecution by starting that complaint process by pushing information into the realm where the prosecutor becomes aware of it. How do we get to where you want us to get to in this case if we say the police couldn't do, couldn't make the deal that they made in this case? How do we get there? If it's unauthorized, you get there because it is fundamentally unfair. It doesn't change the fact that it was a state action. It doesn't change the fact that it is actioned by the state again. Doesn't that bring us right back to what Justice Tice asked you about what the proper means to get there is? Well, I think that as I understood the question she was asking me whether or not the remedy lies in the civil rights sphere as opposed to in this criminal sphere and I hope that my answer was apt regarding what this court's jurisprudence is on the question of due process and the requirement that the state constitution places on the system to have an honorable system and I would submit that what happened in this case is not honorable. It's fundamentally wrong. So why isn't suppression of the statement the appropriate remedy? Well, I would submit that that confuses the concept of procedural due process and the concept of substantive due process. The fact that the defendant may be able to receive a trial that comports with procedural due process does not mean that he has that that trial itself is not violative of substantive due process because it is fundamentally unfair for these charges to have been lodged in the first place. And I think that that is a basic failure to recognize the difference between procedural due process and substantive due process when we say that suppression is an adequate remedy. That on one point and on an additional point that that trial that conforms with procedural due process is not necessarily consistent with substantive due process and clearly does not provide the benefit of the bargain which I think is fundamental to their substantive due process issue. Ms. Berkowitz, there's no denial that there was an agreement. Correct. So you start out with the agreement that there was an agreement and what's the remedy for violating the agreement? Is that not right? Well, and it is to give the bargain and it is only dismissal that comes close to fulfilling the bargain. I mean, there is a liberty interest recognized by due process when the defendant wears the wire and     police in this informant transaction. So that is not an interest involved in the bargain. It is a liberty interest recognized by due      police in this informant transaction. So that is a liberty interest. The liberty and the freedom to give. And I know your red light is on, but what case are you citing to us that says that wearing a wire impacts a liberty interest? Really, the way I'm coming at this analysis is based on the cases. I mean, the state is wishing to present a viewpoint that there is a general rule that says that suppression is the ordinary thing and dismissal is the abstract. I'm really specifically talking about liberty interest. If we're going to talk about due process, what is the interest? You say it's a liberty interest. Certainly, a conviction based on unfair trial would be an imposition on liberty interest. You just told us the liberty interest at stake here was the fact that he was wearing a wire. What case do you have that tells us that that is a cognizable liberty interest? I believe that the language in those cases that have enforced police cooperation agreements or in those cases that have recognized the exception, what they call an exception for enforcement of a police cooperation agreement, that those cases, often enough, or most often, involve this kind of informant activity that is beyond self-incrimination. And the language that those cases use is a cognizable constitutional rights and liberty interest. And for that reason, I submit that this physical activity is a liberty interest above and beyond mere self-incrimination. Thank you, counsel. Your time has expired. Case number 118278, People of the State of Illinois v. Anthony Stepinski, will be taken under advisement as agenda number five. Ms. Perko and Mr. Becker, thank you for your arguments this morning, and you are excused at this time.